# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GIOVANNI TRIPODI** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-2482** |
| | : | |
| **JEFF B. SESSIONS,** *et al* | : | |

## MEMORANDUM

**KEARNEY, J.**  September 10, 2018

Congress defines the seriousness of federal crimes. It retains the constitutional power to decide whether charged conduct is serious "enough" to be considered a felony. If found guilty of a federal felony, Congress long ago decided to bar federal felons from possessing firearms. Encouraged by recently successful challenges to this lifetime ban based on district courts' analysis of the seriousness of certain state crimes, a presently law-abiding businessman convicted of a federal criminal conspiracy felony over thirteen years ago now asks us to declare Congress' ban on his firearm possession unconstitutional under the Second Amendment. Unlike the state convictions at issue in other cases, there can be no dispute Congress defined his criminal conspiracy conduct as "serious" – Congress declared his conduct is a felony. He is barred from possessing a firearm. We lack the authority to ignore Congress' definition because of rehabilitation after an offense occurring over a decade ago or because the felon's involvement in the conspiracy may have been minimal. Those arguments are for sentencing. We decline the businessman's request to ignore Congress' felony definition given the Supreme Court's recognition of the constitutional propriety of banning firearms from federal felons.

## I. Alleged facts

Giovanni Tipodi plead guilty in 2005 to one count of conspiracy under 18 U.S.C. § 371 arising from his purchase of approximately $15,000 in stolen tools.[i] Although this federal felony carried a maximum potential sentence of five years, the court sentenced Mr. Tripodi to two years of probation and a $20,000 fine.[2] Mr. Tripodi complied with the terms of his probation and completed his sentence in July 2007.[3] Mr. Tripodi is remorseful for his wrongful conduct and now leads a productive life supporting a family and running his own construction business.[4] He alleges he has "no history of violent behavior," and has not been involved in a criminal offense since this federal crime.[5]

Congress mandates Mr. Tripodi, as a convicted federal felon, is forever barred from purchasing a firearm under 18 U.S.C. § 922(g)(1). Mr. Tripodi desires and intends to purchase and possess firearms for defense of himself and his family but refrains from doing so out of fear he will be arrested and prosecuted for violating 18 U.S.C. § 922(g)(1).[6] Mr. Tripodi sues the Attorney General of the United States and the Deputy Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, requesting we declare applying 18 U.S.C. §922(g)(1) against him violates his Second Amendment rights. He asks we enjoin Defendants from enforcing 18 U.S.C. §922(g)(1) against him.[7]

## II. Analysis

The United States moves to dismiss Mr. Tripodi's complaint.[8] The United States argues Congress defined his conspiracy conviction as a serious criminal offense and disqualified him from exercising the right to bear arms under the Second Amendment. Mr. Tripodi argues his non-violent felony conviction is aged, the court sentenced him to probation instead of jail time, and he played only a minor role in the conspiracy. He disagrees with Congress' view of the

2

seriousness of his crime. Unlike ambiguity in understanding whether a certain conviction under state law is a serious offense warranting the statutory disqualification as now challenged in a variety of contexts described below, we are today addressing Congress' clear intent defining Mr. Tripodi's conduct as serious.

To properly situate the parties' arguments, we first survey relevant authority addressing Second Amendment challenges after the Supreme Court's decision in *District of Columbia v. Heller.*[9] Applying them, we conclude Mr. Tripodi does not state a plausible Second Amendment claim and dismiss this case.

### A. The federal felon dispossession statute facially bars Mr. Tripodi's possession of a firearm.

"Federal law prohibits any felon—meaning a person who has been convicted of a crime punishable by more than a year in prison—from possessing a firearm."[10] Although § 922(g)(1) "is commonly referred to as the 'felon-in-possession' rule, the law applies to felonies and misdemeanors alike, except that it excludes misdemeanors punishable by two years' or less imprisonment."[11] The parties do not dispute Mr. Tripodi's federal conspiracy conviction carried a maximum possible sentence of five years, and as a result, 18 U.S.C. § 922(g)(1) bars him from possessing a firearm.

In *Heller*, special police officer Rick Heller sought to enjoin the District of Columbia from enforcing its ban on the registration of handguns and its requirement any lawfully owned firearms be stored with a trigger-lock requirement rendering the weapons inoperable.[12] After surveying numerous Founding-era sources, the Court held the Second Amendment enshrines an "individual right to keep and bear arms" untethered to militia service.[13] The Court, in turn, struck down the District's ban on handgun possession in the home and its prohibition against keeping any such lawful firearm in an operable condition.[14]

3

The Court, however, acknowledged "the right secured by the Second Amendment is not unlimited," and listed certain exceptions to the right.[15] The Court said "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by *felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."[16] Such prohibitions presumptively pass muster after all, because our Second Amendment elevates "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[17] The Court's characterization of felon dispossession statutes as "presumptively lawful regulatory measures" facially undermines a constitutional challenge to 18 U.S.C. §922(g)(1).[18]

### B. As-applied challenges to the statutory ban on firearms.

The Court's holding in *Heller*, however, is not the last word on the subject. In the years since, our Court of Appeals clarified the standard we apply when reviewing Second Amendment as-applied challenges when reviewing precedent state crime convictions.

In *United States v. Marzzarella*,[19] our Court of Appeals rejected Mr. Marzzarella's attempt to dismiss on Second Amendment ground his indictment for possessing a firearm with an obliterated serial number under 18 U.S.C. § 922(k). In doing so, our Court of Appeals interpreted *Heller* as setting out "exceptions to the right to bear arms."[20] The Second Amendment, our Court of Appeals continued, "affords no protection for the possession of dangerous and unusual weapons, possession by felons and the mentally ill, and the carrying of weapons in certain sensitive places."[21] Our Court of Appeals continued, "*Heller* suggests, and many of our sister circuits have held, a felony conviction disqualifies an individual from asserting" his or her Second Amendment right "for defense of hearth and home . . . even if a

4

felon arguably possesses just as strong an interest in defending himself and his home as any law-abiding individual."[22]

Mr. Marzzarella's challenge did not fall clearly within the Supreme Court's list of exceptions to the Second Amendment. Our Court of Appeals, however, nevertheless announced a two-pronged approach.[23] This approach requires we "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."[24] If the challenged law does not burden conduct protected by the Second Amendment, "our inquiry is complete," but if it does burden protected conduct, we apply means-end scrutiny.[25] Our Court of Appeals concluded it "c[ould] [not] be certain that the possession of unmarked firearms in the home is excluded from the right to bear arms" but concluded the statute would in any event satisfy means-end scrutiny.[26] The court applied intermediate scrutiny but held § 922(k) would pass muster under even strict scrutiny.[27]

A year after *Marzzarella*, our Court of Appeals in *United States v. Barton*[28] rejected Mr. Barton's attempt to dismiss the federal indictment charging him, a previously convicted felon, with possessing a firearm and ammunition under 18 U.S.C. § 922(g)(1). Our Court of Appeals first rejected Mr. Barton's facial challenge to § 922(g)(1), relying on the Supreme Court's admonition that "felon gun dispossession statues are 'presumptively lawful.'"[29] Turning to Mr. Barton's as-applied challenge, our Court of Appeals held "[t]o raise a successful as-applied challenge," an individual "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections."[30] Our Court of Appeals concluded Mr. Barton failed to present evidence showing his prior convictions for possession of cocaine with intent to distribute and for receipt of a stolen firearm "make him no more likely than the typical citizen to commit a crime of violence."[31]

5

*Barton* left open the possibility a litigant could prevail in an as-applied challenge to § 922(g)(1) solely by showing persuasive evidence he or she is no longer a threat to society.

In *Binderup v. Attorney General of the United States of America*,[32] our Court of Appeals, sitting en banc, held 18 U.S.C. § 922(g)(1) could not bar Daniel Binderup and Julio Suarez for firearm possession as a result of their earlier state law misdemeanor convictions.[33] Our Court of Appeals first clarified the *Marzzarella* two-part test "controls all Second Amendment challenges, including as-applied challenges to §922(g)(1)."[34] And in clarifying the applicable standard, our Court of Appeals overruled *Barton* "[t]o the extent [it] holds that people convicted of serious crimes may regain their lost Second Amendment rights after not posing a threat to society for a period of time."[35] As a result, "the passage of time or evidence of rehabilitation" will not "restore the Second Amendment rights of people who committed serious crimes."[36] Any allegations regarding the age of the conviction or the offender's rehabilitation are thus irrelevant to our analysis.[37]

After *Binderup*, Mr. Tripodi must first show "he was not previously convicted of a serious crime."[38] Only if he makes this showing do we proceed to apply means-end scrutiny.[39]

### C. Mr. Tripodi fails to allege a plausible claim under the Second Amendment.

The United States argues Mr. Tripodi's Second Amendment claim fails at step one of the *Marzzarella-Binderup* analysis because this court convicted him of a serious crime and he is categorically disqualified from exercising rights under the Second Amendment. Mr. Tripodi argues he is a peaceful, rehabilitated member of society and he had a nominal role in the conspiracy; under *Binderup*, he contends, we must restore his Second Amendment right to bear arms.

6

Mr. Tripodi's emphasis on *Binderup* is not persuasive today. The predicate offenses at issue in *Binderup* were state law crimes labeled by Pennsylvania and Maryland as misdemeanors, despite their potential punishments of at least least two years in prison. Our Court of Appeals thus endeavored to discern whether the crimes were nonetheless sufficiently serious, despite their misdemeanor label. Judge Ambro addressed the relevance of this distinction in *Binderup*, emphasizing a legislature's choice to call a crime a misdemeanor carries "an indication of non-seriousness that is lacking when it opts instead to use the felony label."[40] *Binderup*, Judge Ambro instructed, should be read as "limited to the cases before [our Court of Appeals], which involve[d] state-law misdemeanants bringing as-applied Second Amendment challenges to § 922(g)(1)."[41]

Mr. Tripodi's predicate offense, by contrast, carries no such indicia of non-seriousness. Congress chose to punish conspiracy in 18 U.S.C. § 371 as a Class E federal felony offense.[42] Further, each of the offenses Mr. Tripodi conspired to commit are also felonies. In these circumstances, Mr. Tripodi's burden is "extraordinarily high—and perhaps even insurmountable."[43] He committed an offense defined by the sovereign as serious.

The United States Court of Appeals for the Fourth Circuit recently studied dispositive evidence of seriousness in the sovereign's decision to label the predicate offense a felony.[44] The United States urges we do the same. We need not answer this question today, because Mr. Tripodi does not satisfy his high burden of distinguishing himself from other felons historically excluded from the right to bear arms. Mr. Tripodi alleges his felony conspiracy conviction is aged, for a non-violent offense, and he has since led a peaceful and productive life. These considerations, however, are irrelevant to our analysis. Our Court of Appeals cautions "the passage of time or evidence of rehabilitation" are irrelevant to the question of whether Mr.

7

Tripodi committed a serious crime.[45] Further, "[t]he category of 'unvirtuous citizens'" excluded from Second Amendment protection is "broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent."[46]

We are left with Mr. Tripodi's remaining argument: his "nominal" role in the conspiracy.[47] We first do not accept Mr. Tripodi's assumption we assess seriousness in relation to the other members of the conspiracy. Mr. Tripodi cites *United States v. Collado*,[48] a sentencing appeal, for support. Our Second Amendment doctrine, however, focuses on the seriousness of the particular offense at issue. But to the extent we consider it, we have no basis to describe Mr. Tripodi's role in the conspiracy as "nominal." He admitted to purchasing over $15,000 in goods purchased on credit cards stolen from individuals throughout Pennsylvania and New Jersey, serving as a demand-side buyer in a large-scale theft ring with numerous victims. Even if we confined our analysis solely to the elements of the offense, we would reach the same conclusion.

We find support for our analysis in Judge McHugh's recent well-reasoned opinion in *United States v. Irving*.[49] Mr. Irving argued his predicate state law conviction to tampering with public records with an intent to defraud is not sufficiently serious to ban gun possession under *Binderup*. Unlike in *Binderup*, the Commonwealth classified Mr. Irving's predicate offense "as a third-degree felony punishable by up to seven years' imprisonment."[50] Like Mr. Tripodi, "a single, non-violent felony conviction" subjected Mr. Irving to § 922(g)(1)'s firearm ban.[51] Also like Mr. Tripodi, the court sentenced Mr. Irving to two years' probation with no jail time.[52]

Judge McHugh rejected Mr. Irving's Second Amendment challenge after surveying and applying *Binderup*'s fractured analysis. Like Judge McHugh, we find persuasive, even if not dispositive, the sovereign's felony label, indicating seriousness confirmed by both the elements

8

of the conspiracy offense and the specific conduct underlying it. Judge McHugh concluded "little weight should be placed on the leniency of [Mr. Irving's] prior sentencing court."[53] While Mr. Tripodi has no subsequent criminal history, his crime, like Mr. Irving's, had many victims.[54]

### III. Conclusion

Mr. Tripodi's federal felony conviction bars him from possessing a firearm. Congress has defined his conduct as serious. We are not asked to, nor would we, find Congress' policy decision to characterize Mr. Tripodi's crime as not serious. In the accompanying Order, we grant the United States' Motion to Dismiss.

---

[1] Complaint, ECF Doc. No. 1 at ¶ 7.

[2] *Id.* ¶ 8.

[3] *Id.*

[4] *Id.* ¶ 9.

[5] *Id.* ¶¶ 9, 22.

[6] *Id.* ¶ 15.

[7] *Id.* ¶ 7.

[8] *See* ECF Doc. No. 3 (Defendants' Motion to Dismiss); ECF Doc. No. 5 (Plaintiff's Response); ECF Doc. No. 6 (Defendants' Reply). When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are

well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[9] 554 U.S. 570 (2008).

[10] *Welch v. United States*, 136 S. Ct. 1257, 1261 (2016) (citing 18 U.S.C. § 922(g)).

[11] *United States v. Irving*, 316 F. Supp. 3d 879, 887 (E.D. Pa. 2018).

[12] *See District of Columbia v. Heller*, 554 U.S. 570, 574–76 (2008).

[13] *Id.* at 595.

[14] *Id.* at 635.

[15] *Id.* at 626.

[16] *Id.* at 626–27; *see id.* at 635 (noting "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us").

[17] *Id.* at 635.

[18] *Id.* at 626–27 n.26.

[19] 614 F.3d 85 (3d Cir. 2010).

[20] *Id.* at 91; *see id.* ("By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons, we believe the Court intended to treat them equivalently—as exceptions to the Second Amendment guarantee.").

[21] *Id.* at 92.

[22] *Id.*

[23] *Id.* at 89.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 95.

[27] *Id.* at 99.

[28] 633 F.3d 168 (3d Cir. 2011).

[29] *Id.* at 172 (quoting *Heller*, 554 U.S. at 626–27 n.26 and *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)).

[30] *Id.* at 174.

[31] *Id.* at 170, 174.

[32] 836 F.3d 336 (3d Cir. 2016).

[33] Federal law barred Mr. Binderup from purchasing a firearm under 18 U.S.C. § 922(g) as a result of his predicate state law conviction for corrupting a minor, "a misdemeanor subject to possible imprisonment for up to five years." *Id.* at 340. Federal law barred Mr. Suarez from purchasing a firearm under 18 U.S.C. §922(g) as a result of his predicate state law conviction for unlawfully carrying a handgun without a license, "a misdemeanor subject to possible imprisonment for not less than 30 days and not more than three years." *Id.* (cleaned up).

[34] *Id.* at 356.

[35] *Id.* at 350.

[36] *Id.* at 349.

[37] *See King v. Sessions*, No. 17-884, 2018 WL 3008527, at *6 (E.D. Pa. June 15, 2018) (relying on *Binderup* and concluding "the passage of time and Plaintiff's alleged rehabilitation is immaterial to the analysis in this matter").

[38] *Binderup*, 836 F.3d at 356.

[39] *Id.*

[40] *Id.* at 353 n.6.

[41] *Id.*

[42] *See* 18 U.S.C. 3559(a)(5).

[43] *Binderup*, 836 F.3d at 353 n.6.

[44] *See Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 500 (2017) ("Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects grave misjudgment and maladjustment . . . .") (internal quotation marks omitted).

[45] *Binderup*, 836 F.3d at 349.

[46] *Id.* at 348.

[47] ECF Doc. No. 5 at 2.

[48] 975 F.2d 985 (3d Cir. 1992).

[49] 316 F. Supp. 3d 879 (E.D. Pa. 2018).

[50] *Id.* at 887.

[51] *Id.* at 881.

[52] *Id.* at 879 (noting Mr. Irving also had to pay restitution, donate $500 to Dauphin County, and complete 250 hours of community service).

[53] *See id.*

[54] *See id.* at 892 ("I find it significant that Hunt Irving's unlawful acts came at the expense of victims of violence who were entitled to payments from Pennsylvania's Victims Compensation program.").